# ROTTER *v.* HODGKINSON.

PATENTS; INTERFERENCE; RES JUDICATA; CONSTRUCTION OF CLAIMS.

1. The dissolution of an interference on the ground that one of the parties had failed to overcome the references to a prior patent is not *res judicata* of the question of priority involved in a subsequent interference between the same parties, declared after such party had amended his claims. (Citing *Gold* v. *Gold,* 34 App. D. C. 229, and *Moore* v. *United States,* 40 App. D. C. 201.)

2. Where in an interference there is no ambiguity in the claims and they are capable of a broad construction, the court will not read into them a limitation not expressed therein. If one of the parties desires to limit their construction, he should have done so in making his application for a patent. (Following *Geltz* v. *Crozier,* 32 App. D. C. 324; *Engel* v. *Sinclair,* 34 App. D. C. 212; *Western Electric Co.* v. *Martin,* 39 App. D. C. 147; and *Leonard* v. *Horton,* 40 App. D. C. 22.)

3. In an interference proceeding, where the rights of one of the parties to make the claims depends upon the words of the issue, "a governor

controlling both valves," and it appeared that while the governor of his device possibly did not directly control both of its valves, it did control one directly and the other indirectly, and that there was no prior art requiring a limitation to be put upon the word "controlling," thus requiring the broadest construction to be put upon it, it was *held* that he had the right to make the claims, and was entitled to an award of priority.

No. 940.   Patent Appeals.   Submitted January 12, 1915.   Decided March 1, 1915.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.                    *Affirmed.*

The facts are stated in the opinion.

*Mr. G. F. De Wein* for the appellant.

*Mr. Jonathan S. Green* and *Mr. Edgar W. McCallister* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an appeal from a decision of the Commissioner in an interference case relating to an invention of an improvement in a steam turbine system.

The issue is in the following two counts:

"1. In a power system, the combination of an engine, an exhaust pipe extending therefrom divided into two paths, a condenser in direct communication with said exhaust pipe by one of said paths, a turbine in communication with said exhaust pipe by the other of said paths, valves for limiting the flow through said paths, and a governor controlling said valves.

"2. In a power system, the combination of an engine, an exhaust therefor, a turbine in communication with said exhaust, a valve in the turbine inlet, a valve in said exhaust beyond the point of said communication, a governor controlling both said

valves, and a condenser connected to the exhausts of said engine and turbine."

Francis Hodgkinson's application in issue was filed January 2, 1909, while that of Max Rotter was filed July 2, 1910. An interference was declared between Hodgkinson's application and applications of Flanders and Kieser on April 20, 1909, and remained undecided. . January 12, 1912, Hodgkinson filed another application for the same invention, and asked an interference with a patent issued to Max Rotter, whose application had, by an inadvertence, ripened into a patent. Hodgkinson's application was rejected on reference to a British patent.

March 15, 1912, he filed an affidavit stating that he had made the invention prior to July 27, 1909, which was the filing date of the said British patent. April 12, 1912, an interference was declared on two counts with the patent to Rotter.

Rotter moved to dissolve on the ground that Hodgkinson had failed to overcome the reference to the British patent.

The Examiner of Interferences denied transmission of this motion.

July 29, 1912, Rotter petitioned the Commissioner to dissolve the interference. September 10, 1912, the Commissioner granted the petition, and Hodgkinson was given a limited time to comply with rule 75 by filing a proper affidavit, failing which the interference was to be dissolved. The Commissioner said: "Hodgkinson having fallen so far short of establishing a prima facie right to a patent over the reference cited, the patentee, Rotter, should not be called upon to contest an interference with him in respect to the question of priority of invention. I would not hesitate to peremptorily dissolve this interference in view of the facts stated, were it not possible that a showing might eventually be introduced into the records which would cause the redeclaration thereof."

This was in accordance with the procedure adopted in *Graham* v. *Langhaar,* 164 Off. Gaz. 739, in which it was stated: "The question involving alleged informalities in oaths can be determined *ex parte* after the termination of an interference. * * * Where, however, the moving party to an interference

calls attention to an informality in an oath, and contends that he should not be compelled to contest the interference unless and until his opponent files an oath in compliance with the rules, it would seem that an order may properly be issued calling upon the delinquent party to file an oath in compliance with rule 46, within a limited time set, under penalty of dissolution of the interference."

Hodgkinson did not file the oath, but on November 25, 1912, filed an amendment to his original application, which was filed January 2, 1909, making the two claims of this interference, and asking an interference thereon with Rotter's patent. This interference was then declared on a count having the claims above set out.

Neither party having taken testimony, the question of priority arose on the record, and, as Hodgkinson antedated Rotter, he was entitled to have judgment on the record. Rotter moved to dissolve, however, on two grounds. First, that the right of Hodgkinson to make the claims is *res judicata* by reason of the former adjudication between Hodgkinson and Rotter dissolving the interference. Second, Hodgkinson is not entitled to make the claims under his application.

The Examiner of Interference denied the motion on the first ground, but sustained the second, and thereupon awarded priority to Rotter.

On appeal to the Examiners in Chief the Board held that the plea of *res judicata* was well taken, and also that Hodgkinson had no right to make the claims under his disclosure. They affirmed the award to Rotter.

On appeal to the Commissioner this decision was reversed on both points, and priority awarded to Hodgkinson on the record.

Rotter has appealed therefrom, and assigns error on both grounds.

The first question arises on the plea of *res judicata*. We agree with the Commissioner on this point. There was no adjudication of priority. The question involved was whether Hodgkinson had the right to a patent by reason of the reference

to the British patent. That was the sole issue. There was no determination of priority, but simply a denial of patent to Hodgkinson for the reasons given. The question falls within the rule established in such cases by decisions of this court. See *Gold* v. *Gold,* 34 App. D. C. 229, 236, 238; *Moore* v. *United States,* 40 App. D. C. 201, 211; *Rowe* v. *Brinkmann,* 172 Off. Gaz. 1090.

The right of Hodgkinson to make the claims turns upon the words in the claim, "a governor controlling both said valves." At the time of filing his application Hodgkinson had in his application claims of the same general nature as those in this interference. There is no ambiguity in the claim, and they are capable of a broad construction, and the court will not read into them a limitation not expressed therein. Had the appellant desired to limit their construction he should have done so in making his application for a patent. *Geltz* v. *Crozier,* 32 App. D. C. 324, 327; *Engel* v. *Sinclair,* 34 App. D. C. 212, 217; *Western Electric Co.* v. *Martin,* 39 App. D. C. 147; *Leonard* v. *Horton,* 40 App. D. C. 22, 28.

There is no doubt that Rotter's drawing shows a governor acting through a system of levers by a link, and acting directly upon both valves. Its control over the valves is direct. As said by the primary examiner by whom the question was first decided, Hodgkinson's governor controls valve 14, and indirectly controls valve 26. The throttling effect of valve 14 is as positive in its action on valve 26 as in any ordinary relay device for all practical working pressures which may exist in pipe 10.

In other words, while the Hodgkinson governor may not directly control both valves, it controls one directly and the other indirectly. The Assistant Commissioner, from whose decision the appeal is taken, said: "Hodgkinson has an engine 7, an exhaust 10, extending therefrom, divided into two paths 19 and 18, a condenser 17, in direct communication with said exhaust pipe by one of said paths, a turbine 12 in communication with said exhaust pipe by the other of said paths, valves 14 and 26 for limiting the flow through said paths, and a governor 15 con-

trolling said valve. The point made is that Hodgkinson's governor 15 does not control his valves 14 and 26. * * *

"The general function of all these parts in Rotter is very much the same as they are in Hodgkinson. They both have a turbine which is to be run by the exhaust from an engine, and they both need a governor to control the running of the turbine. The function, therefore, of Hodgkinson's governor 15 and Rotter's governor (not lettered) is quite similar. It is true that they operate in a little different way. Rotter's governor acts through the system of levers directly on the valves 10 and 15. Hodgkinson's governor acts on the valve 14, thus opening or closing it in proportion to the speed of the governor, and thus allowing an amount of steam to go through the valve 14 in proportion to the speed of the turbine, and this steam passing through the pipe 10 presses upon the diaphragm 24, an amount proportionately to the speed of the governor.

"It seems to me, therefore, that the Hodgkinson device comes squarely under the terms of the issue. The very object of Hodgkinson's governor 15 is to control the two valves. There would be no use for such a governor in Hodgkinson's construction were it not to control the two valves. It is true it controls them through the medium of the steam passing through the pipe 10, but this is only an indirect instead of a direct control. The natural way to express the influence that Hodgkinson's governor 15 has on his valves is to say that it controls them, although there may be other things that help to do this controlling. It is significant that Hodgkinson in his original claim 4, before he ever saw Rotter's claims, expressed the relation between his governor and his valve by this very word 'controlling.' I do not know of a word that expresses the relation between Hodgkinson's governor and his two valves better than the word 'controlling.' Even in Rotter's structure, and in almost any other conceivable construction, other things than the governor exercise a controlling influence on the two valves, for example, the friction of the parts, etc. So that this word 'controlling' as applied to Hodgkinson's structure is only to a degree more inaccurate than as applied to Rotter's. In such case the proper way

to determine whether it was unduly expanding the meaning of. the word 'controlling' to apply it to Hodgkinson is to find out whether there is any prior art that would limit its meaning. If there is such prior art, such limitation should be put upon this word 'controlling' as would free the count from the prior art, but if not, the broadest possible construction should be put upon this word. Of course, as there is no prior art, the rule is to put the broadest construction on this word, and when this is done the counts clearly read upon Hodgkinson."

We are perfectly satisfied with the reasoning of the Assistant Commissioner, and his decision is affirmed.

The clerk will certify this decision to the Commissioner of Patents as required by law.                                *Affirmed.*